# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT BRUNOT,　　　　　　　　　　)
16071 Park Avenue Extension　　　)
Meadville, PA 16335　　　　　　　)　　　　　Civil Action No. _____
　　　　　　　　　　　　　　　　　)
　　　　　and　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
OMAR ROGELIO MONZA,　　　　　　)
3 Bryant Court　　　　　　　　　　)
Rutherford, NJ 07070　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　and　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
WILLIAM D. THOMPSON,　　　　　　)
3241 Roland Drive　　　　　　　　　)
Deltona, FL 32738　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　and　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
CHRISTINA WOOD, as representative　)
of the ESTATE OF JOHN BARRY,　　　)
COOPER WOOD,　　　　　　　　　　)
701 Millman Boulevard　　　　　　　)
Del Haven, NJ 08251　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　and　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
DAVID P. VRASICH,　　　　　　　　)
1003 Gerry Street　　　　　　　　　)
Woodstock, IL 60098　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
MEDTRONIC, INC.,　　　　　　　　　)
710 Medtronic Parkway,　　　　　　　)
Minneapolis, MN, 55432,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　)

## NOTICE OF REMOVAL

Defendant Medtronic, Inc. ("Medtronic"), a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, by and through its undersigned counsel, hereby provides notice pursuant to 28 U.S.C. § 1446 of its removal of the above-captioned case from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia. The grounds for removal are as follows:

1.      Plaintiffs commenced this action by filing a complaint on May 7, 2008 in the Superior Court for the District of Columbia, and the case was docketed at 08-3467.

2.      Copies of the complaint and summons were served upon Medtronic on May 9, 2008. A true and correct copy of the complaint and summons are attached hereto as Exhibit A. No other pleadings or papers have been filed in this litigation.

3.      Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon Medtronic of the complaint and summons. Since Medtronic is filing this Notice on May 19, 2008, removal is timely.

4.      The time for Medtronic to answer, move, or otherwise plead with respect to the complaint has not yet expired.

5.      Concurrent with the filing of this Notice, Medtronic is serving this Notice on Plaintiffs' counsel and filing a copy of the Notice with the Clerk of the Superior Court for the District of Columbia. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(d) and 1441(a), because the United States District Court for the District of Columbia is the federal judicial district and division embracing the Superior Court for the District of Columbia, where this action was originally filed.

6.    By filing a Notice of Removal in this matter, Medtronic does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

## DIVERSITY OF CITIZENSHIP

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the suit is between citizens of different states, and (2) the amount in controversy exceeds $ 75,000, exclusive of interest and costs.  *Greene v. Am. Fed'n of Gov't Employees*, No. 05-0408 (RMU), 2005 U.S. Dist. LEXIS 19973, at *4 (D.D.C. 2002).

8.    Complete diversity exists between the parties to this action.  Medtronic is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, and thus is a citizen of Minnesota.  *See* Compl. p. 1; Exhibit B hereto (Affidavit of Keyna P. Skeffington); *Branson v. Medtronic, Inc.*, No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094 at * 4 (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by Medtronic on the ground that Medtronic's principal place of business is in Minnesota).

9.    Upon information and belief, each of the Plaintiffs is, and Plaintiff Wood's decedent was, a citizen of a state other than Minnesota (Florida, Pennsylvania, New Jersey, or Illinois).  Compl. p. 1; *see also id.* at ¶¶ 3, 30, 57, 84, 113.

10.    Accordingly, complete diversity exists in this action.

## AMOUNT IN CONTROVERSY

11.    The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. Under 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is

based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 65 (D.D.C. 2002). "Punitive damages are properly considered as part of the amount in controversy." *Id.* at 66.

12. Here, Plaintiffs each seek damages far in excess of $75,000. Each Plaintiff alleges significant injuries caused by Medtronic's leads. Compl. ¶¶ 6, 33, 60, 87, 116. Indeed, Plaintiffs Brunot, Monza, Thompson, and Vrasich specifically "demand[] judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs." Compl. p. 22. Plaintiff Wood "demands judgment against Medtronic in the sum of Five Million Dollars ($5,000,000.00), as compensatory damages and the sum of Five Million Dollars ($5,000,000.00) as punitive damages, plus costs." *Id.* The amount in controversy requirement is plainly satisfied where, as here, a plaintiff specifically requests damages in an amount greater than the jurisdictional minimum. *E.g., Windsor v. Whitman-Walker Clinic, Inc.*, 512 F.Supp.2d 66, 68 n.3 (D.D.C. 2007) (recognizing diversity jurisdiction for removal where plaintiff sought damages of $3,000,000).

13. Because both of the requirements for federal diversity jurisdiction are satisfied, this case is removable by Medtronic.

WHEREFORE, Notice is given that this action is removed from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

DATED:  May 19, 2008

Respectfully submitted,

MEDTRONIC, INC.

By: _____
    David M. Gossett

Michael E. Lackey, Jr.
David M. Gossett
Mayer Brown LLP
1909 K Street, Northwest
Washington, D.C. 20006-1101
mlackey@mayerbrown.com
dgossett@mayerbrown.com
(202) 263-3000 (t)
(202) 263-3300 (f)

*Attorneys for Defendant*
*Medtronic, Inc.*

## CERTIFICATE OF SERVICE

I, David M. Gossett, an attorney, certify that I caused a copy of the attached Defendant, Medtronic, Inc.'s Notice of Removal to be served by sending the same by U.S. mail, postage prepaid, on May 19, 2008, addressed to the following:

> Aaron M. Levine
> Brandon J. Levine
> Renee L. Robinson-Meyer
> Steven J. Lewis
> Benjamin J. Cooper
> 1320 19th Street, N.W., Suite 500
> Washington, D.C. 20036
> Fax: (202) 833-8046

_____
David M. Gossett

# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
05/09/2008
CT Log Number 513408222

TO:    Vicki Tersteeg
       Medtronic, Inc.
       MS: LC300, 710 Medtronic Parkway
       Minneapolis, MN 55432-5604

**RECEIVED**

MAY 12 2008

LAW DEPARTMENT
MEDTRONIC, INC.

RE:    **Process Served in District of Columbia**

FOR:   Medtronic, Inc. (Domestic State: MN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert Brunot, et al. Pltfs. vs. Medtronic, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Initial Order, Addendum, Summons, Complaint |
| **COURT/AGENCY:** | Superior Court - Civil Division, DC<br>Case # 0003467-08 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Medtronic 7232CX ICD with a Sprint Fidelis lead model 6949 - Seeking damages in the sum of $26,000,000.00 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/09/2008 postmarked on 05/07/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Aaron M. Levine<br>Law Offices of Aaron M. Levine & Associates<br>Sunderland Place<br>1320 Nineteenth Street, NW<br>Suite 500<br>Washington, DC 20036<br>202-833-8040 |
| **ACTION ITEMS:** | Telephone, Vicki Tersteeg , 763-505-2671<br>*Left voice message for Vicki Tersteeg on 5/09/08 at 1:38 p.m.*<br>SOP Papers with Transmittal, via  Fed Ex Standard Overnight , 790503154963<br>Email Notification, Vicki Tersteeg VICKI.ANN.TERSTEEG@MEDTRONIC.COM<br>Email Notification, Anne Sederstrom ANNE.SEDERSTROM@MEDTRONIC.COM |
| **SIGNED:** | C T Corporation System |
| **PER:** | Mark Diffenbaugh |
| **ADDRESS:** | 1015 15th Street, N.W.<br>Suite 1000<br>Washington, DC 20005 |
| **TELEPHONE:** | 202-572-3133 |

Page 1 of  1 / MH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ROBERT BRUNOT

    Vs.                         C.A. No.      2008 CA 003467 B

MEDTRONIC, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge JENNIFER M ANDERSON
Date:  May 7, 2008
Initial Conference: 9:30 am, Friday, August 08, 2008
Location:  Courtroom A-50
              515 5th Street N.W.
              WASHINGTON, DC  20001

Caio.doc

MEMORANDUM TO INITIAL ORDER AFFECTING
**ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001  Telephone: 879-1133

| | |
|---|---|
| ROBERT BRUNOT, et al. | |
| *Plaintiff* | 08-0003167 |
| VS. | Civil Action No. |
| MEDTRONIC, INC. | |
| *Defendant* | |

### SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| Aaron M. Levine | |
| Name of Plaintiff's Attorney | By _____ |
| 1320 Nineteenth Street, NW, Fifth Floor | Deputy Clerk |
| Address | |
| Washington, DC 20036 | |
| (202) 833-8040 | Date 05/07/08 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 92     **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| ROBERT BRUNOT, 16071 Park Avenue Extension Meadville, PA 16335 | } } } | 08-0003167 |
| and | } } | Civil Action No. |
| OMAR ROGELIO MONZA, 3 Bryant Court Rutherford, NJ 07070 | } } } } | |
| and | } } | |
| WILLIAM D. THOMPSON, 3241 Roland Drive Deltona, FL 32738 | } } } | |
| and | } } | |
| CHRISTINA WOOD, as representative of the ESTATE OF JOHN BARRY COOPER WOOD, 701 Millman Boulevard Del Haven, NJ 08251 | } } } } | |
| and | } } | |
| DAVID P. VRASICH, 1003 Gerry Street Woodstock, IL 60098 | } } } | |
| Plaintiffs, | } } | |
| v. | } } | |
| MEDTRONIC, INC., 710 Medtronic Parkway Minneapolis, MN 55432 w/s/o CT CORPORATION SYSTEM    1015 15th Street, NW, #1000    Washington, DC 20005 | } } } } } } | |
| Defendant. | } } | |

1

## COMPLAINT
### (ICD Litigation – Products Liability, Punitive Damages)

1.      Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.      At all relevant times, Defendant Medtronic, Inc. ("Medtronic") is engaged, or has been engaged, in the testing, manufacturing, licensing, marketing, selling, promoting, and distributing, either directly or indirectly through third parties, of implantable cardioverter defibrillators ("ICDs") and/or ICD leads throughout the United States, and is doing business in the District of Columbia.

## COUNT I
### (Negligence – Robert Brunot)

3.      On or about November 14, 2006, Plaintiff Robert Brunot purchased and was implanted with a Medtronic 7232CX ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the St. Vincent Health Center in Erie, Pennsylvania.

4.      On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

5.      As a result of Medtronic's defective ICD leads, Plaintiff Robert Brunot requires ongoing medical monitoring and may require surgery to replace said defective device.

6.      As a result of Medtronic's defective ICD leads, Plaintiff Robert Brunot suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

7.      Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT II
### (Strict Liability – Robert Brunot)

8.      All of the allegations in Count I are reincorporated and alleged herein by reference.

9.      Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Robert Brunot.

10.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Robert Brunot.

11.     The subject ICD lead implanted in Plaintiff Robert Brunot was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

12.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Robert Brunot, in the condition in which it sold them.

13.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved.  The risks were greater than a reasonable buyer would expect.

14.     Said product was defective and unreasonably dangerous when put to its intended use.

3

15.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Robert Brunot was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

16.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Robert Brunot for his ICD lead-related injuries, losses, and damages.

## COUNT III
### (Breach of Warranty – Robert Brunot)

17.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

18.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

19.    Medtronic knew, or should have known, that patients, including Plaintiff Robert Brunot and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

20.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

21.    As a direct result of the breach of warranties by Medtronic, Plaintiff Robert Brunot has been injured as aforesaid.

## COUNT IV
### (Misrepresentation – Robert Brunot)

22.    All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

4

23.    Medtronic represented to patients, including Plaintiff Robert Brunot and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

24.    Plaintiff Robert Brunot and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

25.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

26.    As a direct result of said false representations by Medtronic, Plaintiff Robert Brunot was injured as aforesaid.

## COUNT V
### (Punitive Damages – Robert Brunot)

27.    All of the allegations contained in Counts I, II, III, and IV are realleged and incorporated herein by reference.

28.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Robert Brunot's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug

5

Administration, the cardiology profession and Plaintiff Robert Brunot by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT VI
### (Negligence – Omar Monza)

29.    All of the foregoing allegations are realleged and incorporated herein by reference.

30.    On or about April 30, 2007, Plaintiff Omar Monza purchased and was implanted with a Medtronic Model D154VWC ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Hackensack Hospital in Hackensack, New Jersey.

31.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

32.    As a result of Medtronic's defective ICD leads, Plaintiff Omar Monza requires ongoing medical monitoring and may require surgery to replace said defective device.

33.    As a result of Medtronic's defective ICD leads, Plaintiff Omar Monza suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

34.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT VII
### (Strict Liability – Omar Monza)

35.    All of the allegations in Count VI are reincorporated and alleged herein by reference.

36.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Omar Monza.

37.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Omar Monza.

38.     The subject ICD lead implanted in Plaintiff Omar Monza was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

39.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Omar Monza, in the condition in which it sold them.

40.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved.  The risks were greater than a reasonable buyer would expect.

41.     Said product was defective and unreasonably dangerous when put to its intended use.

42.     As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Omar Monza was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

43.   By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Omar Monza for his ICD lead-related injuries, losses, and damages.

## COUNT VIII
### (Breach of Warranty – Omar Monza)

44.   All of the allegations contained in Counts VI and VII are realleged and incorporated herein by reference.

45.   At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

46.   Medtronic knew, or should have known, that patients, including Plaintiff Omar Monza and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

47.   At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

48.   As a direct result of the breach of warranties by Medtronic, Plaintiff Omar Monza has been injured as aforesaid.

## COUNT IX
### (Misrepresentation – Omar Monza)

49.   All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

50.   Medtronic represented to patients, including Plaintiff Omar Monza and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the

subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

51.    Plaintiff Omar Monza and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

52.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

53.    As a direct result of said false representations by Medtronic, Plaintiff Omar Monza was injured as aforesaid.

## COUNT X
### (Punitive Damages – Omar Monza)

54.    All of the allegations contained in Counts VI, VII, VIII and IX are realleged and incorporated herein by reference.

55.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Omar Monza's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Omar Monza by knowingly and

intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XI
### (Negligence – William Thompson)

56.    All of the foregoing allegations are realleged and incorporated herein by reference.

57.    On or about December 20, 2005, Plaintiff William Thompson purchased and was implanted with a Medtronic Model 7288 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at St. Vincent's Medical Center in Jacksonville, Florida.

58.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

59.    As a result of Medtronic's defective ICD leads, Plaintiff William Thompson required surgery to replace said defective lead on or about November 28, 2007, at the Florida Hospital in Orlando, Florida.

60.    As a result of Medtronic's defective ICD leads, Plaintiff William Thompson suffered injuries, including, but not limited to, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

61.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT XII
### (Strict Liability – William Thompson)

62.    All of the allegations in Count XI are reincorporated and alleged herein by reference.

63.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff William Thompson.

64.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff William Thompson.

65.     The subject ICD lead implanted in Plaintiff William Thompson was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

66.     Medtronic expected the ICD leads to reach consumers, including Plaintiff William Thompson, in the condition in which it sold them.

67.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

68.     Said product was defective and unreasonably dangerous when put to its intended use.

69.     As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff William Thompson was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

70.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff William Thompson for his ICD lead-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – William Thompson)

71.    All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

72.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

73.    Medtronic knew, or should have known, that patients, including Plaintiff William Thompson and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

74.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

75.    As a direct result of the breach of warranties by Medtronic, Plaintiff William Thompson has been injured as aforesaid.

## COUNT XIV
### (Misrepresentation – William Thompson)

76.    All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

77.    Medtronic represented to patients, including Plaintiff William Thompson and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the

subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

78.    Plaintiff William Thompson and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

79.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

80.    As a direct result of said false representations by Medtronic, Plaintiff William Thompson was injured as aforesaid.

## COUNT XV
### (Punitive Damages – William Thompson)

81.    All of the allegations contained in Counts XI, XII, XIII and XIV are realleged and incorporated herein by reference.

82.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff William Thompson's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff William Thompson by knowingly

13

and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XVI
### (Negligence – Estate of John Wood)

83.    All of the foregoing allegations are realleged and incorporated herein by reference.

84.    On or about February 1, 2005, Plaintiff's decedent John Wood purchased and was implanted with a Medtronic Model 7288 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Atlantic City Medical Center in Pomona, New Jersey.

85.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

86.    John Wood died on February 21, 2008.

87.    As a result of Medtronic's defective ICD leads, Plaintiff's decedent John Wood suffered injuries, including, but not limited to, his untimely death and suffered physical and mental pain.

88.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT XVII
### (Strict Liability – Estate of John Wood)

89.    All of the allegations in Count XVI are reincorporated and alleged herein by reference.

90.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads,

which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff's decedent John Wood.

91.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff's decedent John Wood.

92.    The subject ICD lead implanted in Plaintiff's decedent John Wood was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

93.    Medtronic expected the ICD leads to reach consumers, including Plaintiff's decedent John Wood, in the condition in which it sold them.

94.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

95.    Said product was defective and unreasonably dangerous when put to its intended use.

96.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff's decedent John Wood was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

97.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff's decedent John Wood for his ICD lead-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Estate of John Wood)

98.     All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

99.     At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

100.    Medtronic knew, or should have known, that patients, including Plaintiff's decedent John Wood and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

101.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

102.    As a direct result of the breach of warranties by Medtronic, Plaintiff's decedent John Wood has been injured as aforesaid.

## COUNT XIX
### (Misrepresentation – Estate of John Wood)

103.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

104.    Medtronic represented to patients, including Plaintiff's decedent John Wood and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

16

105.    Plaintiff's decedent John Wood and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

106.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

107.    As a direct result of said false representations by Medtronic, Plaintiff's decedent John Wood was injured as aforesaid.

## COUNT XX
### (Punitive Damages – Estate of John Wood)

108.    All of the allegations contained in Counts XVI, XVII, XVIII and XIX are realleged and incorporated herein by reference.

109.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff's decedent John Wood's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff's decedent John Wood by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

### COUNT XXI
**(Wrongful Death – Christina Wood Personally and On Behalf of the Estate of John Wood)**

110.    All of the allegations contained in Counts XVI, XVII, XVIII, XIX and XX are realleged and incorporated herein by reference.

111.    As a result of the negligence, strict liability, breach of warranty, and misrepresentation of Medtronic as aforesaid, John Wood's heirs were deprived of John Wood's support, companionship, solatium, and earnings and were required to pay medical and funeral expenses for John Wood.

### COUNT XXII
**(Negligence – David Vrasich)**

112.    All of the foregoing allegations are realleged and incorporated herein by reference.

113.    On or about November 22, 2005, Plaintiff David Vrasich purchased and was implanted with a Medtronic D154 ICD with a Sprint Fidelis lead model 6948.  The device and leads were implanted at the Advocate Good Shepard Hospital in Barrington, Illinois.

114.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6948, due to defects in the leads.

115.    As a result of Medtronic's defective ICD leads, Plaintiff William Thompson required surgery to replace said defective lead on or about March 27, 2008, at the University of Chicago Medical Center in Chicago, Illinois.

116.    As a result of Medtronic's defective ICD leads, Plaintiff David Vrasich suffered injuries, including, but not limited to, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

117.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent

18

design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

**COUNT XXIII**
**(Strict Liability – David Vrasich)**

118.    All of the allegations in Count XXII are reincorporated and alleged herein by reference.

119.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff David Vrasich.

120.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff David Vrasich.

121.    The subject ICD lead implanted in Plaintiff David Vrasich was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

122.    Medtronic expected the ICD leads to reach consumers, including Plaintiff David Vrasich, in the condition in which it sold them.

123.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

124.    Said product was defective and unreasonably dangerous when put to its intended use.

19

125.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff David Vrasich was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

126.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff David Vrasich for his ICD lead-related injuries, losses, and damages.

## COUNT XXIV
### (Breach of Warranty – David Vrasich)

127.    All of the allegations contained in Counts XXII and XXIII are realleged and incorporated herein by reference.

128.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

129.    Medtronic knew, or should have known, that patients, including Plaintiff David Vrasich and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

130.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

131.    As a direct result of the breach of warranties by Medtronic, Plaintiff David Vrasich has been injured as aforesaid.

## COUNT XXV
### (Misrepresentation – David Vrasich)

132.    All of the allegations contained in Counts XXVII, XXIII, and XXIV are realleged and incorporated herein by reference.

133.    Medtronic represented to patients, including Plaintiff David Vrasich and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

134.    Plaintiff David Vrasich and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

135.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

136.    As a direct result of said false representations by Medtronic, Plaintiff David Vrasich was injured as aforesaid.

## COUNT XXVI
### (Punitive Damages – David Vrasich)

137.    All of the allegations contained in Counts XXII, XXIII, XXIV, and XV are realleged and incorporated herein by reference.

138.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff David Vrasich's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug

21

Administration, the cardiology profession and Plaintiff David Vrasich by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

WHEREFORE, Plaintiff Robert Brunot demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff Omar Rogelio Monza demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff William D. Thompson demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Christina Wood, on behalf of the Estate of John Barry Cooper Wood, demands judgment against Medtronic in the sum of Five Million Dollars ($5,000,000.00), as compensatory damages and the sum of Five Million Dollars ($5,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff David P. Vrasich demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130

22

Renee L. Robinson-Meyer, #455375
Steven J. Lewis, #472564
Benjamin J. Cooper, #502149
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
Phone: (202) 833-8040
Fax:    (202) 833-8046
aaronlevinelaw@aol.com

Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

Aaron M. Levine

23



FIRST CLASS

CERTIFIED MAIL

7007 1490 0002 6803 6450

LAW OFFICES
**AARON M. LEVINE & ASSOCIATES**
SUITE 500
1320 19TH STREET, N.W.
WASHINGTON, D.C. 20036

TO:

Medtronic Inc.
w/s/o CT Corporation System
1015 15th Street NW, #1000
Washington, DC 20005

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT BRUNOT,                          )
16071 Park Avenue Extension             )
Meadville, PA 16335                     )          Civil Action No. _____
                                        )
          and                           )
                                        )
OMAR ROGELIO MONZA,                     )
3 Bryant Court                          )
Rutherford, NJ 07070                    )
                                        )
          and                           )
                                        )
WILLIAM D. THOMPSON,                    )
3241 Roland Drive                       )
Deltona, FL 32738                       )
                                        )
          and                           )
                                        )
CHRISTINA WOOD, as representative       )
of the ESTATE OF JOHN BARRY,            )
COOPER WOOD,                            )
701 Millman Boulevard                   )
Del Haven, NJ 08251                     )
                                        )
          and                           )
                                        )
DAVID P. VRASICH,                       )
1003 Gerry Street                       )
Woodstock, IL 60098                     )
                                        )
          Plaintiffs,                   )
                                        )
v.                                      )
                                        )
MEDTRONIC, INC.,                        )
710 Medtronic Parkway,                  )
Minneapolis, MN, 55432,                 )
                                        )
          Defendant.                    )

1

## AFFIDAVIT OF KEYNA P. SKEFFINGTON

I, Keyna P. Skeffington, having been duly sworn on oath, hereby depose and state as follows:

1.     I am Assistant Secretary for Medtronic, Inc.

2.     Medtronic, Inc. is a corporation organized and existing under the laws of the State of Minnesota.

3.     A true and correct copy of a certificate of good standing issued by the Minnesota Secretary of State's Office demonstrating that Medtronic, Inc. is in good standing as of the date of such certificate is attached hereto as Exhibit 1.

4.     Medtronic, Inc.'s principal place of business is located in the State of Minnesota, at 710 Medtronic Parkway, Minneapolis, Minnesota.

FURTHER AFFIANT SAYETH NOT.

_____
KEYNA P. SKEFFINGTON

Subscribed to and sworn
Before me this *16th* day of
May, 2008



Notary Public

JACQUELINE M. HILTNER
Notary Public
Minnesota
My Commission Expires January 31, 2010

2

## State of Minnesota

# SECRETARY OF STATE

Certificate of Good Standing

I, Mark Ritchie, Secretary of State of Minnesota, do certify that: The corporation listed below is a corporation formed under the laws of Minnesota; that the corporation was formed by the filing of Articles of Incorporation with the Office of the Secretary of State on the date listed below; that the corporation is governed by the chapter of Minnesota Statutes listed below; and that this corporation is authorized to do business as a corporation at the time this certificate is issued.

Name: Medtronic, Inc.

Date Formed: 04/23/1957

Chapter Governed By: 302A

This certificate has been issued on 12/28/07.



*Mark Ritchie*
Secretary of State.

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Robert Brunot, Omar Rogelio Monza, William D. Thompson, Christina Wood and David P. Vrasich

**DEFENDANTS**

Medtronic, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Hennepin, MN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Meadville, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Aaron M. Levin
1320 19th Street, NW
Washington, DC 20036

ATTORNEYS (IF KNOWN)

Michael E. Lackey, Jr. & David M. Gossett
Mayer Brown LLP
1909 K Street, NW
Washington, DC 20006

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

● **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**      OR      ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment**<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*\*(If pro se, select this deck)\** | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions**<br>(if Privacy Act)<br><br>*\*(If pro se, select this deck)\** | ☐ **152 Recovery of Defaulted Student Loans**<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting**<br>(if Voting Rights Act) |

**V. ORIGIN**

○ **1 Original Proceeding**  ● **2 Removed from State Court**  ○ **3 Remanded from Appellate Court**  ○ **4 Reinstated or Reopened**  ○ **5 Transferred from another district (specify)**  ○ **6 Multi district Litigation**  ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 U.S.C. §1446. 28 U.S.C. §1332 Diversity Products Liability Action: Plaintiff claims negligence. strict liability. warranty. misrepresentation. punitives

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $** 26,000,000.00  Check YES only if demanded in complain **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

**DATE** 5/19/08  **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_ROBERT BRUNOT, ET AL_____

Plaintiff

v.                                    Civil Action No.    **08  0862**

**MAY 19 2008**

_Meditronic, Inc._____

Defendant

The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **WALTON, J. RBW**_____. All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action.  (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice.  To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a).  Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer.  This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _Maureen Higgins_____
    Deputy Clerk

cc: AARON LEVINE                                          929A
                                                         Rev. 7/02